THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
XOCHITL D. ARTEAGA (Cal. Bar No. 227034)
Assistant United States Attorney
Violent & Organized Crime Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0500
    Facsimile: (213) 894-3713
    E-mail: xochitl.arteaga@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. CR 09-00003-FMC |
|         Plaintiff, | ) |
| | ) GOVERNMENT'S OPPOSITION TO |
|         v. | ) DEFENDANT'S MOTION TO SUPPRESS; |
| | ) MEMORANDUM OF POINTS AND |
| SHAWN LEWIS EWING, | ) AUTHORITIES IN SUPPORT |
| | ) THEREOF; DECLARATION OF DEPUTY |
|         Defendant. | ) JEFFREY DOKE |
| | ) |
| | ) **HEARING DATE:** Sept. 14, 2009 |
| | ) **HEARING TIME:** 1:30 p.m. |
| | ) |

     Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorney Xochitl D. Arteaga, hereby files this opposition to defendant SHAWN LEWIS EWING's motion to suppress evidence.

//

//

//

The opposition is based on the attached memorandum of points and authorities, the attached declaration of Jeffrey Doke, the files and records in this case, and whatever argument or evidence this Court may consider at any hearing on this matter.

DATE: August 14, 2009          Respectfully submitted,

                               THOMAS P. O'BRIEN
                               United States Attorney

                               CHRISTINE C. EWELL
                               Assistant United States Attorney
                               Chief, Criminal Division


                               _____/s/_____
                               XOCHITL D. ARTEAGA
                               Assistant United States Attorney

                               Attorneys for Plaintiff
                               United States of America

TABLE OF CONTENTS

PAGE

Table of Authorities. . . . . . . . . . . . . . . . . . . .   ii

I.    INTRODUCTION.. . . . . . . . . . . . . . . . . . . . . . .   1

II.   STATEMENT OF FACTS.. . . . . . . . . . . . . . . . . . . .   1

III.  ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . .   4

      A.    DEFENDANT HAS NO STANDING TO CHALLENGE THE SEARCH.. .   4

            1.  Search of the Car.. . . . . . . . . . . . . . . .   4

            2.  "Search" of the Counterfeit Currency. . . . . . .   5

      B.    THE TRAFFIC STOP AND SEARCH OF THE COUNTERFEIT
            MONEY WAS REASONABLE UNDER THE FOURTH AMENDMENT.. . .   6

            1.  The Officers had a Reasonable Suspicion
                to Detain Defendant Based Upon a Traffic
                Violation. . . . . . . . . . . . . . . . . . . .   6

            2.  The Detention of Defendant was Reasonable
                in Scope.. . . . . . . . . . . . . . . . . . . .   7

            3.  The Search of the Counterfeit Money
                Was Reasonable.. . . . . . . . . . . . . . . . .   9

                a.  Automobile Exception. . . . . . . . . . . .   9

                b.  The Removal of the Counterfeit Money
                    from the Door Was Proper, And the
                    Counterfeit Money Was in Plain View.. . . .  10

            4.  Alternatively, the Evidence Seized from
                the Car Would Have Been Inevitably
                Discovered.. . . . . . . . . . . . . . . . . . .  13

      C.    NO EVIDENTIARY HEARING IS NECESSARY.. . . . . . . . .  14

IV.   CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . .  15

i

TABLE OF AUTHORITIES

PAGE(S)

CASES:

Alderman v. United States,
    394 U.S. 165 (1969). . . . . . . . . . . . . . . . . . . . 5

Arizona v. Hicks,
    480 U.S. 321 (1987). . . . . . . . . . . . . . . . . . . 11

Arkansas v. Sanders,
    442 U.S. 753 (1979). . . . . . . . . . . . . . . . . . . 9

Brown v. United States,
    411 U.S. 223 (1973). . . . . . . . . . . . . . . . . . . 5

California v. Acevedo,
    500 U.S. 565 (1991). . . . . . . . . . . . . . . . . . . 9

Coolidge v. New Hampshire,
    403 U.S. 443 (1971). . . . . . . . . . . . . . . . . . . 11

Illinois v. Andreas,
    463 U.S. 765 (1983). . . . . . . . . . . . . . . . . . . 13

Illinois v. Gates,
    462 U.S. 213 (1983). . . . . . . . . . . . . . . . . . . 9

Minnesota v. Dickerson,
    508 U.S. 366 (1993). . . . . . . . . . . . . . . . . . . 13

Rakas v. Illinois
    439 U.S. 128 (1987). . . . . . . . . . . . . . . . . . 4, 5

Rawlings v. Kentucky,
    448 U.S. 98 (1980).. . . . . . . . . . . . . . . . . . . 5

Terry v. Ohio,
    392 U.S. 1 (1968). . . . . . . . . . . . . . . . . . . 7, 8

Texas v. Brown,
    460 U.S. 730 (1983). . . . . . . . . . . . . . . . 9, 11, 13

United States v. Andrade,
    784 F.2d 1431 (9th Cir. 1986). . . . . . . . . . . . . . 13

United States v. Chadwick,
    433 U.S. 1 (1977). . . . . . . . . . . . . . . . . . 9, 10

United States v. Knights,
    534 U.S. 112 (2001). . . . . . . . . . . . . . . . . . . 10

United States v. Padilla,
    508 U.S. 77 (1993).. . . . . . . . . . . . . . . . . . . 5

ii

TABLE OF AUTHORITIES (Continued)

CASES:                                                    PAGE(S)

United States v. Ross,
      456 U.S. 798 (1982). . . . . . . . . . . . . . . . . . . 9

United States v. Chavez-Valenzuela,
      268 F.3d 719 (9th Cir. 2001).. . . . . . . . . . . . . . 8

United States v. Choudhry,
      461 F.3d 1097 (9th Cir. 2006). . . . . . . . . . . . . . 7

United States v. Diaz-Castaneda,
      494 F.3d 1146 (9th Cir. 2007). . . . . . . . . . . . . . 6

United States v. Eylicio-Montoya,
      70 F.3d 1158 (10th Cir. 1995). . . . . . . . . . . . . . 5

United States v. Fouche,
      776 F.2d 1398 (9th Cir. 1985). . . . . . . . . . . . 10, 11

United States v. Garcia-Rivera,
      353 F.3d 788 (9th Cir. 2003).. . . . . . . . . . . . 7, 8

United States v. Hillyard,
      677 F.2d 1336 (9th Cir. 1982). . . . . . . . . . . . . . 12

United States v. Issacs,
      708 F.2d 1365 (9th Cir. 1983). . . . . . . . . . . . . . 12

United States v. Lopez-Soto,
      205 F.3d 1101 (9th Cir. 2000). . . . . . . . . . . . . . 7

United States v. Michael R.,
      90 F.3d 340 (9th Cir. 1996). . . . . . . . . . . . . . . 7

United States v. Pulliam,
      405 F.3d 782 (9th Cir. 2005).. . . . . . . . . . . . . . 5

United States v. Singleton,
      987 F.2d 1444 (9th Cir. 1993). . . . . . . . . . . . . . 4

United States v. Twilley,
      222 F.3d 1092 (9th Cir. 2000). . . . . . . . . . . . . . 5

United States v. Vizcarra-Martinez,
      66 F.3d 1006 (9th Cir. 1995).. . . . . . . . . . . . . . 9

United States v. Wiecking,
      757 F.2d 969 (9th Cir. 1983).. . . . . . . . . . . . . . 9

United States v. Willis,
      431 F.3d 709 (9th Cir. 2005).. . . . . . . . . . . . . . 7

iii

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

Defendant Shawn Lewis Ewing is charged with manufacturing and possessing counterfeit money in violation of Title 21, United States Code, Sections 471, 474.  The charges stem from his arrest after a traffic stop, in which law enforcement found counterfeit currency defendant possessed and manufactured concealed in a car window, and within his luggage – all within a car he was a passenger in and did not own.  Defendant confessed to his crimes at the time of his arrest, and also presently does not dispute that the counterfeit money indeed belonged to him.  See Defendant's Motion to Suppress Evidence ("Mot.") at 4; Declaration of Shawn Ewing attached thereto.

There appears to be one discrete issue before the Court. Whether law enforcement violated defendant's Fourth Amendment rights when an officer picked up and looked at counterfeit currency sticking out of the window during the traffic stop. Defendant's motion to suppress the counterfeit money should be denied.  Defendant has no standing to challenge the search of the car he was merely a passenger in, and even if he did have standing, law enforcement acted well within the exception to the warrant requirement when they picked up and looked at the contraband.

## II.  STATEMENT OF FACTS

On December 18, 2008, County of Los Angeles Sheriff's Department deputy Jeffrey Doke initiated a traffic stop of a car owned and operated by Sandra Vera when he learned that the car's registration was expired.  Declaration of Jeffrey Doke ("Doke

1

1  Decl.") at ¶¶ 5, 6, 11.  In the car were two additional people,
2  Michael Smith was in the passenger seat, and defendant was in the
3  backseat.  Id. at ¶ 5.  As Deputy Doke was speaking to Ms. Vera,
4  he noticed that Mr. Smith was behaving in a manner consistent
5  with nervousness and with being under the influence of drugs.
6  Decl. at ¶ 6.  Deputy Doke asked if anyone in the vehicle was on
7  probation or parole, to which Mr. Smith answered yes, and
8  informed the officer that he (Mr. Smith) had a search condition
9  to his parole allowing law enforcement to search him.  Id.
10      Deputy Doke walked around to the passenger side of the car
11 to talk to Mr. Smith, and noticed additional indicia of Mr. Smith
12 being under the influence of drugs.  Id. at ¶ 8.  The officer
13 noticed that Mr. Smith had bloodshot eyes, and was talking in
14 rapid speech. Id.  When the officer arrived at the passenger
15 door, he noticed money sticking out of the window weather
16 stripping from inside the passenger door.  Id. at ¶ 7.
17 Specifically, the officer saw approximately 15 bills folded in
18 half, placed in the window stripping.  Id.  Deputy Doke became
19 immediately suspicious at the sight of the money coming out of
20 the inside of the door, through the window, particularly in light
21 of other circumstances such as Mr. Smith's parole status, his
22 apparent nervousness, and his drug use.  Id.  According to the
23 officer's training and experience, drug traffickers often hide
24 their contraband, and sometimes do so inside door panels. Id. at
25 ¶ 2.  Drug offenders can hide both drugs, and the proceeds from
26 their drug sales – cash, inside of doors panels, in hidden
27 compartments, or other places to shield the contraband from
28 public viewing or law enforcement detection.  Id.  When Deputy

Doke saw the cash sticking outside of the window, Deputy Doke's investigation changed from a traffic stop, and an interview of a parolee, to that of an investigation into illegal activity involving the hiding of money from law enforcement detection. Id. at ¶ 7-9.  The location of the money, coupled with Mr. Smith's drug behavior, his parole status, and the fact that no one in the car claimed ownership of the currency, gave rise to a suspicion of illegal activity related to the money.  Id.

     The officer asked Mr. Smith about the money in the money in the window, and neither Mr. Smith nor any other passenger acknowledged ownership, and at the same time the officer pulled the money out of the window and looked at it.  Id. at ¶ 8-9.  He noticed that some of the serial numbers on twenty dollar bills all were identical, which indicated that the money was counterfeit.  Id.  Upon looking at the serial numbers, the remainder of Deputy Doke's investigation was related to the potential counterfeit money crime.  Id. at ¶ 11.

     Deputy Doke detained Ms. Vera, Mr. Smith, and defendant pending his investigation of the potential counterfeiting activity.  Id.  Mr. Smith told Deputy Doke that he saw defendant make counterfeit twenty dollar bills at a local hotel.  Id. at ¶ 12.  Mr. Smith said that when the car was being stopped by law enforcement, defendant became afraid and handed the counterfeit money to Mr. Smith, who in turn tried to hide it in the car door through the window.  Id.  Deputy Doke interviewed Ms. Vera, who claimed to have no knowledge of the counterfeit money, but only stated that she picked up defendant from a local hotel.  Id. at ¶ 11.

Both the driver, Ms. Vera (after acknowledging ownership of the car) as well as Mr. Smith gave Deputy Doke permission to search the car. Id. at ¶ 11-12. Deputy Doke removed two suitcases and a handbag from the car. Id. at ¶ 13. Ms. Vera said that the suitcases and handbag belonged to defendant. Id. at ¶ 13. Defendant gave the officer permission to search the luggage and handbag. Id. Contained in the suitcases were a large printer, ink cartridges, defendant's resume, a paper cutter, and 17 pages of copied United States currency, among other items. Id. at ¶ 14.

After seeing this evidence, Deputy Doke read defendant Miranda rights, after which defendant admitted that a friend showed him how to try to make money, and admitted that he used the bills. Id. at ¶ 14. The officer arrested defendant and Mr. Smith for counterfeiting, and cited Ms. Vera for a traffic violation. Id. at ¶ 15.

### III. **ARGUMENT**

**A.    DEFENDANT HAS NO STANDING TO CHALLENGE THE SEARCH**

1.  Search of the Car

Defendant's motion fails to address the fact that defendant has no standing to contest the search of Ms. Vera's brown Buick. A defendant bears the burden of proving standing, United States v. Singleton, 987 F.2d 1444, 1449 (9th Cir. 1993), and in order to establish it, defendant must show that he had a reasonable expectation of privacy in the place searched. Rakas v. Illinois, 439 U.S. 128, 143 (1978). "As passenger with no possessory interest in the car" Ms. Vera was driving, defendant "'has no reasonable expectation of privacy in a car that would permit

1  [his] Fourth Amendment challenge to a search of the car.'"
2  United States v. Pulliam, 405 F.3d 782, 786 (9th Cir. 2005),
3  quoting United States v. Twilley, 222 F.3d 1092, 1095 (9th Cir.
4  2000) (alteration in original), and United States v.
5  Eylicio-Montoya, 70 F.3d 1158, 1162 (10th Cir. 1995).

6      The rule in Rakas makes sense.  "The established principle
7  is that suppression of the product of a Fourth Amendment
8  violation can be successfully urged only by those whose rights
9  were violated by the search itself, not by those who are
10 aggrieved solely by the introduction of damaging evidence."
11 Alderman v. United States, 394 U.S. 165, 171-172 (1969).  Fourth
12 Amendment rights cannot be vicariously asserted.  Id. at 174;
13 Rakas, 439 U.S. at 133-134, citing Brown v. United States, 411
14 U.S. 223 (1973); see also United States v. Padilla, 508 U.S. 77
15 (1993) (rejecting the idea of a "co-conspirator exception" to the
16 standing requirement).

17     Although defendant claims ownership of the counterfeit money
18 that was in the door, Mot. at 4, this does not avail him of
19 Fourth Amendment protection against the search of Ms. Vera's car.
20 The mere fact that defendant claimed ownership of the counterfeit
21 money seized "does not confer standing upon him to seek its
22 suppression."  Id., citing Rawlings v. Kentucky, 448 U.S. 98, 105
23 (1980).

24     2.  "Search" of the Counterfeit Currency

25     Defendant argues that the removal and comparison of the
26 counterfeit bills was itself a "search" subject to the Fourth
27 Amendment.  Mot. at 5.  Defendant has not and, indeed cannot,
28 establish standing because he had no reasonable expectation of

privacy in Ms. Vera's brown Buick.  Defendant has made no showing that he had any expectation of privacy in the inside of the passenger door, and defendant has not, and cannot, make a showing that he had an expectation of privacy in the contraband he handed to Mr. Smith.  Finally, defendant has not, and cannot, make a showing that he had an expectation of privacy in the money that was in plain view to anyone who stood near the door even from the outside of the car.  See Doke Decl. at 9.  Defendant abandoned the money to Mr. Smith, and the money was not located where defendant could have had any expectation of privacy.  He therefore cannot meet his burden of establishing standing in this case to challenge the officer's review of the currency.

As in Rakas,  defendant did not demonstrate any legitimate expectation of privacy in the area of the car searched – here, the money in plain view.  And as in Rakas, the Court should find it unnecessary to decide whether the search "might have violated the rights secured to someone else" by the Constitution, "[s]ince it did not violate any rights" of this defendant.  Rakas at 148.

**B.    THE TRAFFIC STOP AND SEARCH OF THE COUNTERFEIT MONEY WAS REASONABLE UNDER THE FOURTH AMENDMENT**

1.    The Officers had a Reasonable Suspicion to Detain Defendant Based Upon a Traffic Violation

Although defendant lacks standing to object to the search of the vehicle, passengers of vehicles do have standing to claim that a traffic stop was unconstitutional.  See, e.g., United States v. Diaz-Castaneda, 494 F.3d 1146, 1150 (9th Cir. 2007).

The Fourth Amendment requires only reasonable suspicion that a traffic violation has occurred to justify an investigatory

1  stop.  <u>United States v. Lopez-Soto</u>, 205 F.3d 1101, 1105 (9th Cir.

2  2000); <u>see also</u> <u>United States v. Choudhry</u>, 461 F.3d 1097 (9th

3  Cir. 2006) (holding that even civil parking violations provide

4  reasonable suspicion to conduct an investigatory stop of a

5  vehicle); <u>United States v. Willis</u>, 431 F.3d 709, 714 (9th Cir.

6  2005) (upholding validity of a traffic stop because officer had

7  reasonable suspicion that defendant had violated traffic laws).

8  Reasonable suspicion is established by evidence of "specific,

9  articulable facts which, together with objective and reasonable

10 inferences, form the basis for suspecting that the particular

11 person detained is engaged in criminal activity."  <u>Lopez-Soto</u>,

12 205 F.3d at 1105; <u>see also</u> <u>Terry v. Ohio</u>, 392 U.S. 1, 21 (1968);

13 <u>United States v. Michael R.</u>, 90 F.3d 340, 347 (9th Cir. 1996)

14 (citations omitted).  Courts should look to the totality of the

15 circumstances when determining whether officers had the requisite

16 reasonable suspicion to stop a vehicle.  <u>Choudhry</u>, 461 F.3d at

17 1100.

18     In this case, Deputy Doke learned that the car in question

19 had expired registration.  Doke Decl. at ¶ 5.  This traffic

20 violation provided the officer with at least reasonable suspicion

21 – if not probable cause — to conduct an investigative stop of the

22 car.  This fact is bolstered by the fact that the driver of the

23 car was indeed issued a traffic citation for having expired

24 registration.  <u>Id</u>. at ¶ 15.

25     2.   <u>The Detention of Defendant was Reasonable in Scope</u>

26     Once officers conduct a valid traffic stop, the Fourth

27 Amendment requires that their investigation be reasonably related

28 in scope to the initial justification for the stop, <u>United</u>

7

1  States v. Garcia-Rivera, 353 F.3d 788, 791 (9th Cir. 2003); see
2  also Terry, 392 U.S. at 28-31, but the "officer may, however,
3  broaden the line of questioning if there are additional
4  particularized and objective factors arousing suspicion."
5  Garcia-Rivera, 353 F.3d at 791.

6     The law allows what transpired in this case, in that law
7  enforcement can continue to detain individuals commensurate with
8  new suspicions of illegal activity.  Here, Deputy Doke's actions
9  were appropriate because they were all reasonably related to
10  additional particularized and objective factors that aroused
11  suspicion and broadened the scope of the detention.  See Garcia-
12  Rivera, 353 F.3d at 788, 791.  In Garcia-Rivera, for example,
13  officers learned that defendant did not have proof of insurance,
14  giving rise to suspicion of a stolen vehicle, and that defendant
15  had a prior felony conviction for armed robbery.  Id.  These
16  facts, coupled with defendant's "furtive movements," justified
17  the officers' decision to expand the scope of the detention
18  beyond the initial traffic violation.  Id.

19     Similarly, in this case, the officer noticed that Mr. Smith
20  appeared nervous,[1] and also appeared to be under the influence of
21  drugs.  Doke Decl. at ¶ 6.  The officer also learned that Mr.
22  Smith was on parole.  Id.  Deputy Doke, like the officers in
23  Garcia-Rivera, was justified in expanding the scope of the
24  detention beyond the initial traffic violation when he walked

25  _____

26     [1] While nervousness alone is not enough to justify a
prolonged stop, it is a factor that courts can consider, among
27  others, when determining whether or not a prolonged stop was
reasonable.  United States v. Chavez-Valenzuela, 268 F.3d 719, 726
28  (9th Cir. 2001).

1  around to question Mr. Smith further, which is when the officer
2  noticed the currency sticking out of the window in plain view and
3  inquired as to its origin and nature.  Id. at ¶ 8.  Shifting the
4  scope of the stop to investigate the money sticking out of the
5  window was reasonable to enable the officer to determine whether
6  or not any of the passengers were trafficking in drugs or other
7  illegal contraband; reasonableness is all that the Fourth
8  Amendment requires.

9         3.   The Search of the Counterfeit Money Was Reasonable

10             a.   Automobile Exception

11        There is no Fourth Amendment requirement that law
12  enforcement officers obtain a warrant to search an automobile
13  when they have probable cause to believe that it contains
14  contraband or evidence of criminal activity.  California v.
15  Acevedo, 500 U.S. 565, 579-80 (1991); United States v. Ross, 456
16  U.S. 798, 825 (1982); see also United States v. Wiecking, 757
17  F.2d 969, 971 (9th Cir. 1983).  The automobile exception is based
18  both on the inherent mobility of vehicles which often makes
19  obtaining a warrant impractical, United States v. Chadwick, 433
20  U.S. 1, 12 (1977), and the diminished expectation of privacy in
21  vehicles.  Arkansas v. Sanders, 442 U.S. 753, 761 (1979).

22        Probable cause is a "flexible, common-sense standard,"
23  Texas v. Brown, 460 U.S. 730, 742 (1983), determined by looking
24  at the totality of the circumstances.  Illinois v. Gates, 462
25  U.S. 213, 230-31 (1983).  "A practical, nontechnical probability
26  that incriminating evidence is involved is all that is required
27  for the search." United States v. Vizcarra-Martinez, 66 F.3d
28  1006, 1011 (9th Cir. 1995) (internal quotation marks omitted).

9

1 The officers' experience and training, and the deductions and
2 inferences they make, may be considered in determining probable
3 cause.  United States v. Fouche, 776 F.2d 1398, 1403 (9th Cir.
4 1985).

5      The facts and circumstances available to Deputy Doke were
6 sufficient to warrant a reasonable belief that a crime has been
7 committed and the car contained evidence of criminal activity.
8 Deputy Doke had evidence that a parolee[2] was under the influence
9 of drugs in that car.  Doke Decl. at ¶¶ 6-7.  It is a crime for
10 an individual to be under the influence of drugs, and a crime for
11 a parolee to be under the influence of illegal drugs.  The car
12 could have contained drugs or drug paraphernalia.  In addition,
13 Deputy Doke saw money sticking out of the window of the car.  Id.
14 at ¶ 7.  Drug traffickers are known to conceal drugs or the
15 proceeds of their drug sales, and sometimes conceal contraband in
16 door panels or in hidden compartments.  Id. at ¶ 2.  Taken
17 together, the officer had sufficient information to believe that
18 criminal activity was afoot, and had probable cause to believe
19 the vehicle contained incriminating evidence.

20      b.   The Removal of the Counterfeit Money from the Door Was
            Proper, And the Counterfeit Money Was in Plain View
21
22      Defendant states that act of removing and comparing the
23 counterfeit bills was itself a search subject to the Fourth
24 Amendment.  Mot. at 5.  Under defendant's theory, even if the

25      _____
26          [2] Under a general Fourth Amendment approach of examining the
    totality of the circumstances, a probation search condition is "a
27 salient circumstance."  United States v. Knights, 534 U.S. 112, 118
    (2001). When you analogize Knights to the facts of this case, Mr.
28 Smith's parole status, and his parole search condition, are salient
    factors in the overall determination of probable cause.

                                    10

1  officer had the lawful authority to search Ms. Vera's car, he did
2  not have the authority to pick up the counterfeit money and look
3  at their serial numbers, or authority to move the money at all.
4  Id.

5      Putting aside the fact that defendant has no standing to
6  challenge the search of the car, or standing to challenge the
7  search of the counterfeit money within the car, the officer had
8  probable cause to "search" the money itself.  In order to search
9  evidence in plain view, officers require probable cause
10 justification.  See Arizona v. Hicks, 480 U.S. 321 (1987).  In
11 order for the plain view search to be upheld, there must be a
12 prior valid intrusion, the evidentiary nature of the item must be
13 immediately apparent, and the discovery of the plain view
14 evidence must be inadvertent.  Coolidge v. New Hampshire, 403
15 U.S. 443 (1971). "Immediately apparent" does not mean that the
16 officer must know that seized items are contraband or evidence of
17 crime, but rather, "probable cause to associate the property with
18 criminal activity" suffices. Texas v. Brown, 460 U.S. 730, 741
19 (1983).

20     Here, the officer's "search" of the currency was pursuant to
21 a valid stop and proper warrantless vehicle search, and it was
22 inadvertently discovered by the officer who happened to see it
23 while talking to Mr. Smith.  The issue before the Court,
24 according to defendant, is whether the contraband nature of the
25 counterfeit currency was "immediately apparent" to the officer.
26 The government submits that all of the evidence available to the
27 officer made the currency sticking out of the window give rise to
28 probable cause to associate the money with criminal activity,

1  which is all <u>Brown</u> requires.

2       First, the location of the currency alone can give rise to a
3  concrete cause for suspicion, justifying an officer's further
4  examination of the evidence.  See <u>United States v. Issacs</u>, 708
5  F.2d 1365, 1370 (9th Cir. 1983), citing <u>United States v.</u>
6  <u>Hillyard</u>, 677 F.2d 1336 (9th Cir. 1982).  Second, Deputy Doke
7  properly considered the money's placement, together with the
8  passengers' refusal to claim ownership over it, with his
9  knowledge of drug traffickers hiding money, as evidence that the
10 currency was contraband.  While it is true that the currency on
11 its own is not sufficient evidence of criminal activity, the
12 deputy had more information than just the presence of currency.
13 The currency was treated as contraband, as it was stuffed in a
14 window.  There were all the other factors enumerated above, as
15 well as the presence of a parolee, and the presence of an
16 individual under the influence of drugs, to add to the probable
17 cause determination that the currency was contraband, and
18 possibly connected to narcotics offenses.

19      Deputy Doke had probable cause to search the car as a whole,
20 and probable cause to search the plain view currency within it.
21 His actions are especially justified in light of the rationale
22 for the plain view doctrine, and defendant's particular behavior.
23 "The rationale of the plain-view doctrine is that if contraband
24 is left in open view and is observed by a police officer from a
25 lawful vantage point, there has been no invasion of a legitimate
26 expectation of privacy and thus no "search" within the meaning of
27 the Fourth Amendment -- or at least no search independent of the
28 initial intrusion that gave the officers their vantage point."

1  Minnesota v. Dickerson, 508 U.S. 366, 375 (1993), citing Illinois
2  v. Andreas, 463 U.S. 765, 771,(1983); Texas v. Brown, supra, at
3  740.  Deputy Doke had every lawful right to be at that window,
4  questioning Mr. Smith.  The fact that he saw the ill-concealed
5  contraband in the window, from his plain view vantage point,
6  should weigh in the Court's consideration of this issue.

7        4.   Alternatively, the Evidence Seized from the Car Would
               Have Been Inevitably Discovered
8

9        Even if the Court finds that the search of the counterfeit
10  currency was not a valid warrantless search, the evidence found
11  in the car should not be suppressed because it would have been
12  inevitably discovered either pursuant to a consent search, or by
13  a valid, warrantless search pursuant to the automobile exception.
14  Under the inevitable discovery doctrine, evidence that would
15  normally be excluded will be admitted if the government is able
16  to show by a preponderance of the evidence that the evidence
17  would inevitably have been discovered by lawful means.  United
18  States v. Andrade, 784 F.2d 1431, 1433 (9th Cir. 1986).

19       Had the deputy never picked up the counterfeit currency in
20  the window, he would inevitably discovered that it was
21  counterfeit nonetheless.  The deputy's suspicions were
22  sufficiently raised when he saw the currency, so he asked the
23  passengers about it and received no claim of ownership.  Doke
24  Decl. at ¶ 11.  The officer would have asked for permission to
25  search the car even if he hadn't viewed the duplicate serial
26  numbers on the currency.  Id. at ¶ 16.  And Ms. Vera, the owner
27  of the car, freely gave her permission to search the car.  Id. at
28  ¶ 11.  With the owner's consent, the officer would have

                                    13

1  inevitably discovered the counterfeit nature of the currency
2  pursuant to a consent search.  Also, Mr. Smith, the parolee, also
3  gave his permission to search the car and was on parole with a
4  search condition.  Id. at ¶ 12.  Deputy Doke could have searched
5  the area near the parolee pursuant to the parolee's search
6  condition.  Id. at ¶ 10.  Furthermore, defendant himself gave the
7  officer permission to search his luggage.  Id. at ¶ 13.  Had the
8  deputy never viewed the matching serial numbers, but instead
9  first searched defendant's luggage, he would have found
10 additional counterfeit currency.  Certainly this would have given
11 rise to a valid warrantless search pursuant to the automobile
12 exception given the clear probable cause.

13 **C.    NO EVIDENTIARY HEARING IS NECESSARY**

14      The government does not believe that an evidentiary hearing
15 is necessary because defendant has not presented any evidence –
16 in the form of his declaration or any other admissible evidence –
17 that contradict the statements contained in the declaration of
18 Deputy Doke.  Because there are no facts in dispute – material,
19 or otherwise – the issue could be decided on the briefs and with
20 no evidentiary hearing necessary.

21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27
28

**IV**

**CONCLUSION**

For the foregoing reasons, defendant's motion to suppress should be denied.

DATED: August 14, 2009          Respectfully submitted,

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division


_/s/_
XOCHITL D. ARTEAGA
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

15