<u>Declaration of Jeffrey Doke</u>

I, Jeffrey Doke, hereby state and declare as follows:

1. I am a deputy with the County of Los Angeles Sheriff's Department ("LASD"), and have worked for LASD since 1999. I have been a Deputy with LASD since 2005. If called to testify in this matter, I could and would testify competently to the facts stated below.

2. During my service with LASD, I attended basic academy training to become a law enforcement officer. During this 18 week training, I learned about conducting traffic stops, and investigating criminal activity, including drug-related offenses (such as detecting when an individual is under the influence, as well as detecting potential drug trafficking activity). Throughout my employment at LASD, I have participated in trainings and briefings relevant to the detection of drug offenses. Based on my training and professional experience, I am aware that drug couriers hide contraband to avoid detection, including hiding contraband (such as drugs or the proceeds of drug sales – cash) in door panels and in hidden compartments in cars.

3. I have received training specific to counterfeiting crimes. I have investigated approximately 2-3 counterfeit cases.

4. On December 18, 2008, I was serving as a deputy with LASD and working on patrol. My responsibilities included patrolling the city of Hawaiian Gardens, monitoring local traffic, and making traffic stops for violations of California state code.

1

1      5.  On December 18, 2008, I initiated a traffic stop on a
2  1993 brown Buick with a Washington state license plate, because I
3  learned that the car had expired registration.  Driving a car
4  with expired registration on public streets violates the
5  California Vehicle Code.
6      6.  During the traffic stop, I first spoke to the driver,
7  who identified herself as Sandra Vera.  I saw two other people in
8  the car, a man who identified himself as Michael Smith in the
9  passenger seat, and a man who later identified himself as Shawn
10 Ewing in the backseat.  I asked the three individuals if anyone
11 was probation or parole.  The passenger, Mr. Smith, told me that
12 he was on parole.  Mr. Smith also told me that he had a search
13 condition to his parole.  I noticed that Mr. Smith appeared
14 nervous, and also appeared to be under the influence of a
15 stimulant.  He appeared to have a difficult time keeping still in
16 his seat, and spoke in fast and rapid speech.
17     7.  I walked around the vehicle to speak to the parolee, Mr.
18 Smith.  Mr. Smith had the passenger window down.  I noticed money
19 sticking out from inside the door, through where the window
20 should be.  I saw several bills, perhaps as many as 15 total,
21 folded in half stuck inside the window stripping and partially
22 sticking out.  When I saw the money sticking out from the window
23 area of the door, where money ordinarily is not placed, I was
24 suspicious that someone was trying to avoid its detection.  The
25 location of the money, together with the fact that there was a
26 parolee present, and that Mr. Smith appeared to be under the
27 influence of a drug, added to my suspicion that potential
28

1  criminal activity was occurring.

2     8.  I asked Mr. Smith why there was money coming out of the
3  door, and he said he did not know.  None of the other passengers
4  said anything in response to my question.  I noticed that Mr.
5  Smith was speaking rapidly, and had bloodshot eyes, which added
6  to my suspicion that he was under the influence of a stimulant
7  drug.

8     9.  I pulled several of the bills out of the door, and
9  looked at them.  I noticed that they appeared to be $20 bills,
10 but several of the bills shared the same serial number.  I
11 immediately suspected that the bills were fictitious.  I asked
12 about the money at the same time as I was pulling it out, and the
13 fact that nobody claimed ownership of the cash raised further
14 suspicion that there was potential criminal activity occurring.
15 The money was in view to anyone standing near the passenger door.
16 I did not have to touch the car to view the money.

17    10.  I believe I am authorized to search the immediate area
18 around a parolee when the parolee has a parole search condition.
19 Under such circumstances, I believe I can search anything in the
20 parolee's possession or control.  The fictitious money in the
21 door was near Mr. Smith, and appeared to be within his control.

22    11.  After I looked at the money, I asked if anyone knew
23 that the money was counterfeit.  All three said no.  I then
24 detained all three pending an investigation into counterfeiting.
25 I asked all three passengers to exit the vehicle.  I asked the
26 driver, Ms. Vera if the car was hers.  She said that it was.  I
27 asked her if I had her permission to search the car.  She said
28

1 yes. She also told me that she had picked up defendant from a
2 local hotel.
3     12. I next spoke to Mr. Smith, who told me that he saw
4 defendant make counterfeit money at a hotel.  Mr. Smith told me
5 that defendant was scared when I conducted the traffic stop, and
6 gave the counterfeit money to Mr. Smith.  Mr. Smith said he knew
7 the bills were counterfeit, so Mr. Smith attempted to push them
8 down the window.  I asked Mr. Smith what else was in the car, and
9 Mr. Smith responded by giving me permission to search the car.
10    13. Upon searching Ms. Vera's vehicle, I found two large
11 suitcases and a handbag.  Ms. Vera told me that the suitcases and
12 handbag belonged to defendant.  I asked defendant what was in the
13 suitcases and bag, and defendant responded "Why don't you look
14 inside?"  I understood this to mean that I had defendant's
15 consent to search the suitcases and bag, so I did so.  Inside the
16 first suitcase I found a printer and ink cartridges, among other
17 items.  Inside the second suitcase I found a resume in
18 defendant's name, a paper cutter, and seventeen sheets of uncut
19 $20 counterfeit bills, among other items.
20    14. After the search, I read defendant his Miranda rights.
21 Defendant said he understood his rights and agreed to speak with
22 me without an attorney present.  I asked defendant about the
23 counterfeit money, and defendant said that a friend told him to
24 try to make money, and that the friend set up a computer.
25 Defendant indicated that he spent some counterfeit money, but did
26 not give me any specific details.
27    15. I arrested defendant and Mr. Smith for manufacturing
28

counterfeit currency. I cited Ms. Smith for the vehicle code violation for driving a car with expired registration.

16. Even had I not picked up the cash from the window, I would have still sought permission to search the car. If given permission, I would have retrieved the money in the window to investigate whether it was evidence of criminal conduct.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed in Los Angeles, California this 13 day of August, 2009.

_____
Jeffrey Doke